Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 26 2012, 9:41 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PAULA M. SAUER**
Danville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JONATHAN E. PERDEW, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 32A01-1112-CR-587 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable David H. Coleman, Judge
Cause No. 32D02-0909-FC-23

**November 26, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Jonathan E. Perdew ("Perdew") was convicted in Hendricks Superior Court of two counts of Class C felony child molesting and sentenced to an aggregate sentence of eight years executed and eight years suspended. Perdew appeals and presents four issues, which we restate as:

I. Whether the trial court erred in denying Perdew's motion to sever the two charges of child molesting facing Perdew;

II. Whether the trial court abused its discretion in sentencing Perdew;

III. Whether Perdew's sentence is inappropriate in light of the nature of the offense and the character of the offender; and

IV. Whether the trial court abused its discretion in ordering Perdew to pay restitution to the mothers of his two victims.

We affirm Perdew's convictions and sentences, but reverse the restitution order and remand with instructions that the trial court modify the order to reflect the amount of restitution supported by the evidence.

## Facts and Procedural History

During the time relevant to this appeal, Perdew was thirty-five years old and lived in an apartment in Hendricks County with his wife and three step-children. The step-children included a step-son, N.K., and a step-daughter, E.K., who was ten years old at the time. At this time, E.K. befriended two other similarly-aged girls who lived in the same apartment complex—H.B., who was born in 2000, and S.M., who was born in 2001. Both of these girls visited E.K.'s apartment to play with E.K.

In July 2009, H.B. was at E.K.'s apartment playing a board game with E.K. and N.K. Because it was not her turn in the game, H.B. got up and went to search for E.K.'s pet cat. H.B. found the cat in E.K.'s bedroom, where she sat with the cat in her lap. As

2

H.B. was petting the cat, Perdew came into the bedroom, sat down near H.B., and began to pet the cat too. Perdew then reached under H.B.'s skirt, but over the shorts she was also wearing, and touched the girl's "tootsie," her word for her genitalia. Tr. pp. 397, 381, 386, 453. This caused H.B. to close her legs, get off the bed, and leave the room. H.B. then told her sister, A.B., what had happened, and they went to another friend's apartment. There, the other friend's father overheard the girls' conversation and informed H.B.'s mother of what he had heard. H.B.'s mother spoke with her, and H.B. told her mother what had happened. H.B.'s mother then contacted the police. H.B. was later interviewed at a child advocacy center, where she repeated her allegations.

Subsequently, S.M.'s mother heard about what had happened to H.B. and was concerned because S.M. also played at Perdew's apartment with E.K. S.M.'s mother asked her daughter if anyone had touched her in an inappropriate manner. S.M. told her mother that Perdew had indeed touched her private areas over her clothing. S.M. was also interviewed at a child advocacy center. There, she disclosed that, when she had spent the night at E.K.'s apartment, Perdew had touched her private area. Specifically, she stated that when she had gone to the kitchen alone to get a drink of water, Perdew came into the kitchen. As S.M. left the kitchen, Perdew "swept" his hand between her legs and touched her genitals over her clothes. She also stated that, once when she was roller skating outside the apartment complex, Perdew had touched her buttocks outside her clothing.

3

When interrogated by the police, Perdew admitted that he might have touched H.B. accidentally when he was petting the cat. He also stated that he tried to avoid "them girls" because "they're a little bit bigger girls," and "the way they dress." Tr. pp. 671-72.

On September 1, 2009, the State charged Perdew with one count of Class C felony child molesting stemming from the incident with H.B., and on October 22, 2009, the State charged Perdew with another count of Class C felony child molesting stemming from the incident with S.M. Prior to trial, Perdew filed a motion to sever the two counts of child molesting. The trial court denied his motion. Perdew renewed his motion immediately before his trial began on October 26, 2011, and the trial court again denied the motion. On October 28, 2011, the jury found Perdew guilty as charged. At a sentencing hearing held on November 22, 2011, the trial court sentenced Perdew to four years executed and four years suspended on each count and ordered the sentences to be served consecutively. Thus, Perdew was sentenced to an aggregate term of eight years executed and eight years suspended. The trial court also ordered Perdew to pay restitution in the amount of $1,000 to both the mothers of his victims. Perdew now appeals.

## I. Severance of Charges

Perdew first claims that the trial court erred in refusing to sever the two counts of child molesting Perdew was charged with. Joinder of offenses is governed by Indiana Code section 35-34-1-9(a), which provides that:

> Two (2) or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when the offenses:

4

(1) are of the same or similar character, even if not part of a single scheme or plan; or

(2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

Offenses may be sufficiently "connected together" to justify joinder under subsection 9(a)(2) "if the State can establish that a common *modus operandi* linked the crimes and that the same motive induced that criminal behavior." Craig v. State, 730 N.E.2d 1262, 1265 (Ind. 2000) (quoting Ben-Yisrayl v. State, 690 N.E.2d 1141, 1145 (Ind. 1997)).

Severance of joined offenses is governed by Indiana Code section 35-34-1-11(a), which provides:

> Whenever two (2) or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character, the defendant *shall* have a right to a severance of the offenses. In all other cases the court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering:
> (1) the number of offenses charged;
> (2) the complexity of the evidence to be offered; and
> (3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

(emphasis added). Thus, severance is required as a matter of right under Subsection 11(a) whenever offenses are joined solely because they are of the same or similar character under Subsection 9(a)(1). See Heinzman v. State, 895 N.E.2d 716, 720 (Ind. Ct. App. 2008) (citing Ben-Yisrayl, 690 N.E.2d at 1145).

But if offenses are joined under Subsection 9(a)(2) because they are "based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan," then the decision to sever multiple charges is a matter within the trial

5

court's discretion. Heinzman, 895 N.E.2d at 720 (citing Davidson v. State, 558 N.E.2d 1077, 1083 (Ind. 1990)). Charges may be sufficiently connected as a "single scheme or plan" if the State can establish that they are connected by a distinctive nature, a common modus operandi linked the crimes, and the same motive induced the criminal behavior. Id.

Perdew claims that his offenses were joined solely because they were of the same or similar character and that he therefore had a right to severance. The State claims on appeal that Perdew's offenses comprised a single plan or scheme with a common *modus operandi* and that severance was not mandatory. The State notes that in both cases, his step-daughter's friends visited Perdew's apartment to play. And in both cases, Perdew waited until the girls were alone, approached the girls, then touched their genitalia. The State then concludes that, "[w]hile perhaps not the most devious or complex plan, Perdew's actions nevertheless comprised a single scheme or plan, therefore, severance was not required." Appellee's Br. at 9. We are inclined to agree.

We first acknowledge that our court has considered and affirmed convictions in cases where the charges against a defendant were far more closely connected. See, e.g., Craig, 730 N.E.2d at 1265 (holding that defendant's acts of molesting two girls were thus part of a single scheme or plan and that severance was not statutorily mandated where each victim was a member of a girl scout troop led by defendant's wife, each victim was spending the night at defendant's house when molested, and the defendant had both participate in a "taste test" where he blindfolded them and made them place various items

in their mouths). But this does not mean that two crimes need to be nearly identical to support their joinder as part of a single scheme or plan.

Here, both of Perdew's victims were visiting Perdew's step-daughter at Perdew's apartment. And Perdew waited until both victims were isolated until he approached them. He then touched both victims' genital areas with his hands, and did so over the victim's clothing. We agree with the State that, while not the most complex scheme, Perdew's crimes were sufficiently connected to constitute a single scheme or plan and were not joined simply because they were of the same or similar character. Cf. Craig, 730 N.E.2d at 1265.

Thus, severance was not statutorily required, and the trial court did not err in denying Perdew's motion to sever. See Heinzman, 895 N.E.2d at 721 (concluding that charges against defendant were part of a single scheme or plan and defendant was thus not entitled to severance as a matter of right where defendant met both of his victims through his employment as a caseworker for CPS, defendant bought gifts for both victims, and molested them while taking them on drives); Piercefield v. State, 877 N.E.2d 1213, 1217 (Ind. Ct. App. 2007) (holding that charges against the defendant had more in common than merely the same character and that severance was not mandatory where the victims were the defendant's step-children, the defendant isolated the children in the shower, and defendant made both children give him massages); see also Booker v. State, 790 N.E.2d 491, 494 (Ind. Ct. App. 2003) (concluding that because both victims were in defendant's care, touched by defendant while in bed, and tested positive for gonorrhea,

7

that the charges were correctly joined because they were the part of a single scheme or plan and not simply because the crimes were of the same character), trans. denied.[1]

## II. Sentencing Discretion

Perdew also argues that the trial court abused its discretion in sentencing him. As noted above, the trial court sentenced Perdew to four years executed and four years suspended on both counts and ordered the sentences to be served consecutively. Thus, Perdew was sentenced to an aggregate term of eight years executed and eight years suspended. In so doing, the trial court relied on three aggravating factors: Perdew's history of delinquency and criminal behavior; both victims were less than twelve years old, and the impact on the victims' families had been substantial financially and in the amount of time they had spent dealing with the crimes.

Sentencing decisions "rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007). With regard to sentencing, a trial court may abuse its discretion by: (1) failing to enter a sentencing statement, (2) finding aggravating or mitigating factors unsupported by the record, (3) omitting mitigating factors clearly supported by the record and advanced for consideration, or (4) giving reasons that are improper as a matter of law. Id. at 490-91. "Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have

---

[1] Perdew claims only that the trial court lacked discretion in denying his motion to sever. He does not argue in the alternative that the trial court abused its discretion in denying his motion to sever.

8

imposed the same sentence had it properly considered reasons that enjoy support in the record." Id. at 491.

A. *Improper Aggravator*

Perdew claims that the trial court abused its discretion by considering an aggravating factor that was improper as a matter of law. Specifically, he claims that the trial court noted that both victims were under the age of twelve. Perdew was convicted of child molesting, which requires that the victim be under the age of fourteen. See Ind. Code § 35-42-4-3. Thus, Perdew claims that the trial court relied on the victims' age, which was an element of the crime, as an aggravating factor. This, Perdew argues, was improper.

We first note that trial courts are specifically authorized by statute to consider as an aggravating factor that "[t]he victim of the offense was less than twelve (12) years of age . . . at the time the person committed the offense." Ind. Code§ 35-38-1-7.1(a)(3). We therefore cannot agree with Perdew that the trial court's consideration of the age of the victims was improper as a matter of law.

We recognize, however, that cases decided under the pre-2005 amendments to our sentencing scheme consistently held that a trial court could not use a factor constituting a material element of the offense as an aggravating circumstance to justify an enhanced sentence. See, e.g., Johnson v. State, 687 N.E.2d 345, 347 (Ind. 1997). But under the current post-Blakely advisory sentencing scheme, a material element of a crime may also form an aggravating circumstance to support a sentence greater than the advisory, although perhaps not a maximum sentence. Pedraza v. State, 887 N.E.2d 77, 80 (Ind.

9

2008). As explained in Pedraza, because trial courts no longer "enhance" sentences under the advisory sentencing scheme, using a material element of a crime as an aggravating factor is "no longer an inappropriate double enhancement."[2] Id. Perdew's argument therefore fails.

*B. Insufficient Sentencing Statement*

Perdew also claims that the trial court abused its discretion by failing to adequately explain its decision to impose consecutive sentences. Perdew notes that, in Monroe v. State, 886 N.E.2d 578, 580 (Ind. 2008), our supreme court noted that "before a trial court can impose a consecutive sentence, it must articulate, explain, and evaluate the aggravating circumstances that support the sentence." Perdew claims that the trial court here failed to do so.

In Monroe, however, there was only one victim. See id. at 578-79. Here, there were two victims. The existence of multiple victims justifies the imposition of consecutive sentences. Sanchez v. State, 938 N.E.2d 720, 723 (Ind. 2010); Tyler v. State, 903 N.E.2d 463, 468 (Ind. 2009). As noted in Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008): "Whether the counts involve one or multiple victims is highly relevant to the decision to impose consecutive sentences if for no other reason than to preserve potential deterrence of subsequent offenses. Similarly, additional criminal activity directed to the same victim should not be free of consequences."

---

[2] Nor did the trial court impose the maximum sentence based solely on this on aggravating factor. See id. (noting that "a trial court that imposed a maximum sentence, explaining only that an element was the reason, would have provided an unconvincing reason that might warrant revision of sentence on appeal.").

10

Moreover, even if the trial court should have more adequately explained its decision to impose consecutive sentences and abused its discretion by failing to do so, this does not require us to reverse Perdew's sentence. If a trial court's sentencing statement fails to "meet[] the requirements of the law," the court on appeal has several options. Windhorst v. State, 868 N.E.2d 504, 507 (Ind. 2007). We can remand to the trial court for clarification or a new sentencing statement, or we may exercise our authority to review and revise the sentence under Appellate Rule 7(B). Id. If the defendant's sentence is not inappropriate, then we may affirm the sentence despite the improper sentencing statement. See id.; see also Chappell v. State, 966 N.E.2d 124, 134 n.10 (Ind. Ct. App. 2012), trans. denied; Felder v. State, 870 N.E.2d 554, 558 (Ind. Ct. App. 2007); Mendoza v. State, 869 N.E.2d 546, 556 (Ind. Ct. App. 2007). As explained below, we do not think that Perdew's sentence is inappropriate.

### III. Appellate Rule 7(B)

Pursuant to Indiana Appellate Rule 7(B) (2009), we may revise a sentence otherwise authorized by statute if, "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Although we have the power to review and revise sentences, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell, 895 N.E.2d at 1225. Our review under Appellate Rule 7(B)

11

should focus on "the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id.

In Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010), our supreme court held that Appellate Rule 7(B) should not be so narrowly construed so that the appellate court may consider only the aggregate length of the sentence without considering whether a portion of that sentence was suspended "or otherwise crafted using any of the variety of sentencing tools available to the trial judge." Conversely, the reviewing court may also determine a sentence to be inappropriate because of its overall length, even though a substantial portion has been suspended. Id. Indeed, a defendant on probation may have his probation revoked and, therefore, required to serve up to the full original sentence.[3] Id. And it is the defendant's burden on appeal to persuade us that the sentence imposed by the trial court is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006). This is a burden that Perdew has failed to meet.

With regard to the nature of the offense, Perdew used his young step-daughter to essentially lure young victims to his apartment where he touched their genitalia. S.M. testified that Perdew's actions had changed her life, and H.B.'s mother stated that her daughter now had trouble trusting other people and was afraid to go outside for fear that Perdew would be nearby.

---

[3] We further note that Perdew was not sentenced as a credit-restricted felon. The "evaluation of a defendant's sentence may include consideration of the defendant's credit time status because this penal consequence was within the contemplation of the trial court when it was determining the defendant's sentence." Sharp v. State, 970 N.E.2d 647, 651 (Ind. 2012).

Perdew's character also justifies the trial court's sentencing decision. Perdew has a criminal history that includes two misdemeanor convictions for invasion of privacy. Although this is not a particularly extensive criminal history, Perdew admitted that there had been four other allegations of sexual misconduct directed at him in the past. One of these incidents involved watching his step-son N.K. masturbate, which the child confirmed. Perdew's wife also caught her husband in her daughter's bedroom at night. Perdew also told the investigating officer that he tried to avoid his step-daughter's young friends because "they're a little bit bigger girls," and "the way they dress." Tr. pp. 671-72. It is clear from the record that Perdew is sexually attracted to young children. Under these facts and circumstances, we cannot say that Perdew's sentence of eight years executed and eight years suspended is inappropriate.

## IV. Restitution

Perdew also claims that the trial court erred in ordering him to pay restitution. The State argues that Perdew's challenge to the restitution order is waived because Perdew failed to make any objection to the trial court's sentencing order. We addressed a similar issue in Iltzsch v. State, wherein we wrote:

> We acknowledge that this court has held that a defendant who fails to object at trial to the entry of a restitution order or to the admission of evidence concerning the amount of restitution waives appellate review of the issue.
>
> However, as this court has recently noted, "the vast weight of the recent caselaw in this state indicates that appellate courts will review a trial court's restitution order even where the defendant did not object based on the rationale that a restitution order is part of the sentence, and it is the duty of the appellate courts to bring illegal sentences into compliance." We agree

13

with the weight of the authority and will therefore proceed to address [the] argument on the merits.

972 N.E.2d 409, 411-12 (Ind. Ct. App. 2012) (citations omitted) (quoting Rich v. State, 890 N.E.2d 44, 48 (Ind. Ct. App. 2008)). Similarly, we choose to address Perdew's claim regarding the restitution order on its merits.

Indiana Code section 35-50-5-3(a) provides that, in addition to any sentence imposed for a felony or misdemeanor, a court may order the payment of restitution to the victim of the crime. The purpose of a restitution order is to impress upon a criminal defendant the magnitude of the loss he has caused and to defray costs to the victims caused by the offense. Iltzsch, 972 N.E.2d at 412. The decision to order restitution lies within the discretion of the trial court, and we will reverse the trial court's decision only for an abuse of that discretion. Id. An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before it, or if the trial court misinterprets or misapplies the law. Id.

Pursuant to the relevant statute, the trial court must base its restitution order upon a consideration of:

(1) property damages of the victim incurred as a result of the crime, based on the actual cost of repair (or replacement if repair is inappropriate);

(2) medical and hospital costs incurred by the victim (before the date of sentencing) as a result of the crime;

(3) the cost of medical laboratory tests to determine if the crime has caused the victim to contract a disease or other medical condition;

(4) earnings lost by the victim (before the date of sentencing) as a result of the crime including earnings lost while the victim was hospitalized or participating in the investigation or trial of the crime; and

(5) funeral, burial, or cremation costs incurred by the family or estate of a homicide victim as a result of the crime.

14

I.C. § 35-50-5-3(a).

Thus, a trial court's restitution order must be supported by sufficient evidence of actual loss sustained by the victim of a crime. Iltzsch, 972 N.E.2d at 412. The amount of actual loss is a factual matter that can be determined only upon the presentation of evidence. Id. Evidence supporting a restitution order is sufficient if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture. Id.

Perdew claims that the evidence was insufficient to support the restitution order. We disagree. H.B.'s mother submitted a letter, which was included in the pre-sentence investigation report ("PSI"), indicating that she had missed ninety hours of work, totaling $1,260.90 in lost income. She also explained that she had to withdraw from seven credit hours' worth of college classes, at $348 per credit hour, for a total loss of $2,436. Thus, she explained that she had incurred $3,696.90 in financial losses due to Perdew's molestation of her daughter and his subsequent prosecution. S.M.'s mother submitted a similar letter wherein she indicated that, in October 2011 alone, she had missed 43.5 hours of work, which at her pay rate of $17.29 per hour, totaled $752.11 in lost income. She further detailed her travel mileage, which at forty cents per mile, was equivalent to $72.80. The trial court ordered Perdew to pay each woman $1,000 in restitution.

Perdew now complains that there was no supporting documentation for these claims of expenses. However, we think that these letters were sufficient to support the trial court's restitution order because they did not subject the trial court to mere

15

speculation or conjecture. This is in contrast to the situation in Iltzsch, wherein the only evidence supporting the restitution order was the probation officer's secondhand account of the victim's assertions that his property had been damaged and that his total loss was $711.95, without further explanation. See 972 N.E.2d at 413-14. Cf. J.H. v. State, 950 N.E.2d 731, 734 (Ind. Ct. App. 2011) (reversing trial court's restitution order where it was based on two slips of paper handed to prosecuting attorney shortly before the hearing and which were not included in the record for review).

We do agree, however, with Perdew's claim that the trial court erred in awarding S.M.'s mother $1,000 despite the fact that her letter only listed $824.91 in actual financial losses. Thus, we remand with instructions that the trial court amend its restitution order to indicate that Perdew pay restitution to S.M.'s mother in the amount of $824.91.

Lastly, Perdew claims that the trial court erred by failing to determine whether he was able to pay the ordered restitution. "[W]hen the trial court enters an order of restitution as part of a condition of probation, the court is required to inquire into the defendant's ability to pay." Pearson v. State, 883 N.E.2d 770, 772 (Ind. 2008) (citing Ind. Code § 35-38-2-2.3(a)(5)). This prevents indigent defendants from being imprisoned because of a probation violation based on the defendant's failure to pay restitution. Id. A trial court may also order restitution as part of a defendant's sentence wholly apart from probation. Id. And when restitution is ordered as part of an executed sentence, an inquiry into the defendant's ability to pay is not required because, in such a situation, restitution is merely a money judgment for which a defendant cannot be imprisoned for non-payment. Id. (citing Ind. Code § 35-50-5-3(b)).

16

Here, Perdew claims that the trial court ordered restitution as a condition of probation. The State claims that the restitution order was part of an executed sentence apart from probation. For each of the victim's mothers, the trial court's sentencing order states that "$1,000.00 Restitution to [the mother] to be paid by End of Probation." Appellant's App. p. 253. It does not specifically state that this is a condition of probation, nor are we inclined to read this into the trial court's order. Instead, we read the trial court's order to mean that payment of restitution in each case is a civil money judgment, for which Perdew may not be imprisoned for failure to pay. Thus, the trial court did not err by failing to inquire into Perdew's ability to pay.[4]

## Conclusion

The trial court did not err in denying Perdew's motion for severance because severance was not statutorily required. Nor did the trial court abuse its discretion in sentencing Perdew. And Perdew's sentence is not inappropriate in light of the nature of the offense and the character of the offender. Although there was evidence supporting an restitution order, the trial court improperly ordered restitution to one of the victims' mother in an amount in excess of the evidence.

Affirmed in part, reversed in part, and remanded.

VAIDIK, J., and BARNES, J., concur.

---

[4] Even if the trial court should have inquired into Perdew's ability to pay, we note that he admitted that he had a job earning nine dollars per hour. And the trial court gave Perdew until the end of his probation—sixteen years—to pay the total of $2,000 restitution. This amounts to a mere $2.40 per week.